El Juez Presidente Señor Hernández Denton
emitió la opinión del Tribunal.
En el caso criminal que se ventila contra la Sra. Marla Figueroa Pomales tenemos que interpretar el Art. 109 del nuevo Código Penal, 33 L.P.R.A. see. 4737 (Art. 109 del Código Penal), que tipifica el delito de homicidio negligente y que dispone como modalidad agravada el ocasionar la muerte al conducir un vehículo bajo los efectos de bebidas embriagantes. En específico, debemos resolver qué relación se debe conferir al Art. 7.02 de la Ley de Vehículos y Tránsito de Puerto Rico, Ley Núm. 22 de 7 de enero de 2000 (9 L.P.R.A. sec. 5202(a)), que prohíbe conducir con una con-centración de alcohol en la sangre igual o mayor a .08 cen-tésimas, al determinar la instrucción que corresponde ofre-cer al Jurado en el proceso criminal seguido contra la señora Figueroa Pomales. En dicho proceso se le acusa de violar el Art. 109 del Código Penal por alegadamente haber causado la muerte a varias personas dedicadas a las ven-tas ambulantes, mientras conducía un vehículo de motor bajo los efectos de bebidas embriagantes. Debe quedar claro, por lo tanto, que en esta ocasión no pretendemos definir ni establecer exhaustivamente los contornos del de-lito tipificado en el Art. 109 del nuevo Código Penal, sino determinar su relación —en el aspecto que nos concierne— con la Ley de Vehículos y Tránsito de Puerto Rico vigente.
I
El caso de autos tiene su génesis en un trágico y lamentable accidente ocurrido el 17 de junio de 2006, ocasión en que tres personas perdieron la vida y la de otras tantas, entre ellas, la señora Figueroa Pomales, peticionaria ante nos, cambió radicalmente. A base de esos hechos, se pre-sentaron acusaciones contra la señora Figueroa Pomales *409 imputándole tres cargos por infracción al Art. 109 del Có-digo Penal (homicidio negligente), supra; un cargo por in-fracción al Art. 7.06 de la Ley de Vehículos y Tránsito de Puerto Rico, 9 L.P.R.A. see. 5206; cuatro cargos por violación al Art. 5.07 de la misma ley, 9 L.P.R.A. see. 5128, y un cargo por infracción al Art. 7.02 de ese estatuto, supra.
En cuanto a los cargos por homicidio negligente se ale-garon dos modalidades agravadas, a saber: haber ocasio-nado la muerte con claro menosprecio de la seguridad de los demás y al conducir un vehículo de motor bajo los efec-tos de bebidas embriagantes. En particular, con respecto a la modalidad agravada que nós ocupa, se le imputó haber ocasionado la muerte a los comerciantes Amador Rosario Cerezo, Hernán Corchado Feliciano y Edwin Armán Delgado mientras conducía un vehículo de motor bajo los efec-tos de bebidas embriagantes y a una velocidad mayor a la permitida por ley para ejercer el debido dominio y control del vehículo.
Determinada la causa probable para acusar por los tres cargos de homicidio negligente agravado, se celebró el jui-cio en su fondo ante un Jurado. En la última etapa del juicio, el Ministerio Público solicitó que, con respecto al cargo de homicidio negligente al amparo del Art. 109 del Código Penal, supra, se instruyera al Jurado que “en Puerto Rico manejar un vehículo de motor bajo los efectos de bebidas embriagantes implica que una persona tenga un por ciento mayor a .08 centésimas del uno por ciento de alcohol en su sangre o aliento” y que esa definición fuera aplicada a todos los delitos ante la consideración del Jurado. Apéndice de la Petición de certiorari, Anejo V, pág. 66. En específico, propuso que se impartiera la instrucción siguiente:
Para establecer este cargo se tiene que demostrar:
1) que el acusado causó la muerte al perjudicado sin inten-ción;
*410 2) que el hecho fue realizado en la comisión o en el intento de operar un vehículo de motor teniendo una concentración de alcohol en la sangre de .08 o más;
3) que la concentración de alcohol en el acusado fue el resul-tado del consumo de bebidas embriagantes antes o durante el manejo o el intento de manejar un vehículo de motor. Apéndice de la Petición de certiorari, Anejo V, pág. 63.
Sin embargo, ante la negativa del tribunal de instancia de acoger la instrucción propuesta, el Ministerio Público —en reconsideración— propuso una nueva instrucción:
Que el acusado manejaba o intentaba manejar mi vehículo de motor, que el acusado mientras manejaba o intentaba manejar tenía una concentración de alcohol en la sangre mayor al .08%. Que la concentración de alcohol en la sangre, o aliento del acusado fue producto de consumir bebidas embriagantes antes o durante que se manejara un vehículo de motor [sic], y que conforme a esas definiciones una persona con un .08% o más causa la muerte a un peijudicado sin intención. Apéndice de la Petición de certiorari, Anejo VII, págs. 73-74. ,
El tribunal a quo también rechazó esa instrucción y pro-cedió a impartir la instrucción siguiente basada en los cri-terios subjetivos expuestos por este Tribunal en Domínguez v. GA Life, 157 D.P.R. 690 (2002):
La frase o terminología “bajo los efectos de bebidas embria-gantes” denota una disminución o pérdida de las facultades físicas y mentales del individuo, causada por la presencia de alcohol en el cuerpo.
Esto es, se requiere que la concentración de la sustancia alcohólica en el individuo sea tal que sus capacidades físicas, motoras y mentales se vean afectadas de manera que el fun-cionamiento del individuo sea uno distorsionado.
Una frase que indica que se “está bajo los efectos de algo o alguien”, intima la disminución o carencia total de control so-bre sí mismo, ya sea de las facultades físicas y/o mentales del individuo.
No es un porcentaje de alcohol específico, sino el efecto o incapacidad que genere sobre el individuo, su condición física, metabolismo, peso, tolerancia al alcohol, si es hombre o mujer. La observación de la forma y manera en que el vehículo era *411 manejado, hasta la observación de la persona, luego de ser detenida por la policía, en cuanto a sus destrezas motoras y del lenguaje, hasta el olor, la vestimenta y su apariencia, el color de ojos, entre otros factores.
Corresponde al Ministerio Público probar que el (la) acusa-do(a) estaba bajo los efectos de bebidas embriagantes y su re-lación causal con el accidente.
Según les he explicado, en el delito de homicidio negligente grave no es necesaria la intención de matar. Lo que se pena-liza en un acto criminal de esta naturaleza es la negligencia del acusado al ocasionar la muerte de otra al manejar un ve-hículo de motor bajo los efectos de bebidas embriagantes. (Én-fasis suprimido.) Apéndice de la Petición de certiorari, Anejo III, págs. 31-32.
Inconforme con esa instrucción, el Ministerio Público so-licitó la paralización del juicio y recurrió ante el Tribunal de Apelaciones. Dicho foro revocó el dictamen por entender que el Art. 7.02 de la Ley de Vehículos y Tránsito de Puerto Rico establece un por ciento que define lo que es “[estar] bajo los efectos de bebidas embriagantes”. Por lo tanto, de-terminó que la instrucción que se le impartiera al Jurado con respecto al homicidio negligente en su modalidad agra-vada, por haberse ocasionado la muerte al conducir un ve-hículo de motor bajo los efectos de bebidas embriagantes, debía incluir la definición establecida en la Ley de Vehícu-los y Tránsito de Puerto Rico, ya que esa es la ley especial que define el concepto. Siendo así, revocó la resolución re-currida en cuanto ésta hace formar parte de las instruccio-nes al Jurado el que, para probar que la acusada conducía bajo los efectos de bebidas alcohólicas, no es suficiente la prueba de alcohol y deben ser considerados, únicamente, los criterios establecidos en Domínguez v. GA Life, supra.
De dicho dictamen recurre ante esta Curia la señora Figueroa Pomales y aduce que el foro apelativo erró al re-vocar la determinación del Tribunal de Primera Instancia, ya que —a su entender— ésta era correcta en derecho. Sos-tiene que, por el contrario, la instrucción propuesta por el Ministerio Público y avalada por dicho foro es contraria *412 a derecho porque infringe el principio de legalidad y la pro-hibición de establecer delitos por analogía. En particular, aduce que las instrucciones propuestas por el fiscal tienen el efecto práctico de desatender la forma en que el legisla-dor tipificó el delito de homicidio negligente agravado al conducir un vehículo de motor bajo los efectos de bebidas embriagantes y que se estaría creando por analogía un ele-mento constitutivo de agravante distinto al requerido en el Art. 109 del Código Penal, supra.
Por su parte, en su comparecencia ante nos, el Procura-dor General modifica la posición anteriormente expuesta ante el Tribunal de Apelaciones y aclara que la alusión a la Ley de Vehículos y Tránsito de Puerto Rico en la instruc-ción al Jurado no se hace para incorporar al delito tipifi-cado en el Art. 109 del Código Penal una presunción irrefutable de embriaguez meramente con que se pruebe que la peticionaria tenía una concentración de alcohol en la sangre igual o mayor a .08%. Más bien, aduce que dicha normativa se traería como un factor más que le permitiría al Jurado inferir que la peticionaria estaba bajo los efectos de bebidas embriagantes, pero que ello no obligaría al Ju-rado a concluir que, en efecto, se encontraba en tales condiciones. A esos efectos, propone una instrucción dis-tinta a la que presentó el Ministerio Público en el foro de instancia y a la que presentó él mismo ante el Tribunal de Apelaciones. En específico, propone que se imparta la ins-trucción siguiente:
Para hallar culpable a la acusada por homicidio negligente, ustedes tendrán que quedar convencidos más allá de duda ra-zonable de que la acusada, al momento del accidente que causó la muerte de las víctimas, conducía el vehículo bajo los efectos de bebidas embriagantes ... con claro menosprecio de la seguridad de los demás, y que el accidente se produjo como consecuencia del riesgo creado por ella al conducir en estado de embriaguez o con claro menosprecio de la seguridad de los demás.
Al determinar si la acusada conducía bajo los efectos de em-briaguez, ustedes podrán tomar en consideración que la prueba de alcohol realizada a la acusada arrojó un resultado *413 de .12% de concentración de alcohol en la sangre y que la ley establece que es ilegal que una persona conduzca un vehículo de motor con una concentración de alcohol en la sangre de .08% o más. Sin embargo, ustedes no están obligados a inferir que la acusada conducía en estado de embriaguez sólo por ra-zón del resultado de la prueba de alcohol. Considerada toda la prueba, ante duda razonable sobre si la acusada conducía bajo los efectos de bebidas embriagantes al momento del accidente, deben absolverla del cargo de homicidio negligente.
[Igualmente,] deben absolverla ante duda razonable sobre la relación causal entre el accidente y la conducción en estado de embriaguez o con claro menosprecio a la seguridad de los demás. ... Apéndice de la Petición de certiorari, Moción ur-gente para complementar el alegato del Procurador General, págs. 2-3.
Dado que es la primera vez que este Tribunal tiene que interpretar el Art. 109 del nuevo Código Penal, supra, decidimos expedir el recurso. Además, conscientes de la pa-ralización del juicio, acortamos los términos correspondientes para que las partes sometieran sus respectivos alegatos. Contando con la comparecencia de las partes, procedemos a resolver con la rapidez y el cuidado que el caso amerita.
II
Sabido es que en juicios ante Jurado se requiere que se impartan instrucciones sobre el derecho aplicable en términos entendibles para los ciudadanos que cumplen con esa obligación cívica de tanta importancia en nuestro sistema penal. Pueblo v. Negrón Ayala, 171 D.P.R. 406 (2007). El acusado tiene derecho a que en esas instrucciones se le transmitan al Jurado todos los aspectos de derecho que, bajo cualquier teoría razonable, puedan estar presentes en las deliberaciones que tienen que llevar a cabo. Pueblo v. Acevedo Estrada, 150 D.P.R. 84 (2000). El tribunal tiene la responsabilidad de velar por que las instrucciones que se impartan sean correctas, claras, precisas y lógicas. Pueblo v. Sánchez Molina, 134 D.P.R. 577 (1993).
*414 En este caso la controversia estriba, precisamente, en determinar la corrección, precisión y lógica de la instruc-ción que el juzgador de instancia se propone impartir a los miembros del Jurado con respecto al delito de homicidio negligente en la modalidad agravada basada en ocasionar la muerte al conducir un vehículo de motor bajo los efectos de bebidas embriagantes.
El referido delito está tipificado en el Art. 109 del Código Penal de 2004, supra, el cual establece que
[t]oda persona que ocasione la muerte a otra por negligencia incurrirá en delito menos grave, pero se le impondrá la pena de delito grave de cuarto grado.
Cuando la muerte se ocasione al conducir un vehículo de motor bajo los efectos de bebidas embriagantes, sustancias controladas o con claro menosprecio de la seguridad de los demás; o al apuntar y disparar con un arma de fuego hacia un punto indeterminado, incurrirá en delito grave de tercer grado. 33 L.P.R.A. see. 4737.
Vemos, pues, que la segunda oración del artículo que tipifica el homicidio negligente estableció una modalidad grave cuando la muerte se ocasiona en cualquiera de las circunstancias siguientes: (1) “al conducir un vehículo de motor bajo los efectos de bebidas embriagantes, sustancias controladas o con claro menosprecio de la seguridad de los demás”, o (2) “al apuntar y disparar con un arma de fuego hacia un punto indeterminado”. D. Nevares-Muñiz, Nuevo Código Penal de Puerto Rico, Hato Rey, Instituto para el Desarrollo del Derecho, 2005, pág. 148.
No obstante, ni el Código Penal derogado ni el nuevo Có-digo Penal define lo que constituye “[estar] bajo los efectos de bebidas embriagantes”. Por consiguiente, debemos anali-zar las normas de interpretación, ya que ello es esencial para resolver la controversia del caso de autos en tomo a si se le deben impartir instrucciones al Jurado sobre las dispo-siciones de la Ley de Vehículos y Tránsito de Puerto Rico. Ahora bien, debemos aclarar que —contrario a lo que aduce *415 la peticionaria— ese ejercicio no conlleva una violación al principio de legalidad ni a la prohibición de analogías. Tales principios están recogidos en los Arts. 2 y 3 del nuevo Código Penal, 33 L.P.R.A. sees. 4630 y 4631, y, en esencia, constitu-yen limitaciones de índole estatutaria al poder punitivo del Estado. L.E. Chiesa Aponte, Derecho Penal Sustantivo, San Juan, Pubs. JTS, 2007, See. 2, pág. 42.
En particular, el principio de legalidad prohíbe que se inste una acción penal por un hecho que no esté expresamente definido como delito y que se impongan penas o medidas de seguridad que la ley no establezca con anterioridad a los hechos. 33 L.P.R.A. see. 4630. Por su parte, la prohibición de la analogía supone una prohibición a que se creen o impongan por analogía delitos, penas o medidas de seguridad. 33 L.P.R.A. see. 4631. “Bajo la prohibición de la analogía, el juez está impedido de penalizar por un hecho no tipificado como delito por su semejanza con uno tipificado como tal; o admitir un agravante o una gradación específica no enumerada, basándose en sus semejanzas con una enumerada; o imponer una pena no contemplada por la ley por su analogía con una prevista en la ley”. D. Nevares-Muñiz, Derecho Penal Puertorriqueño: Parte General, Hato Rey, Inst. Desarrollo del Derecho, 1983, pág. 63.
Evidentemente, este caso no implica la creación de un delito por analogía ni supone que se le apliquen a la peti-cionaria elementos o agravantes del delito que no estén expresamente establecidos en la ley. Todos los elementos del delito que se imputa a la señora Figueroa Pomales han sido tipificados con anterioridad por el legislador, al igual que el agravante cuyo análisis nos ocupa: haber causado la muerte al conducir un vehículo de motor bajo los efectos de bebidas embriagantes. Lo que no hizo el legislador fue de-finir lo que es “[estar] bajo los efectos de bebidas embria-gantes” en el contexto del Art. 109 del Código Penal. Pre-cisamente, la ausencia de esa definición es lo que hace de *416 esta controversia una de interpretación estatutaria,(1) ya que debemos aplicar las normas de hermenéutica para de-limitar el concepto y, a base de ello, resolver qué instruc-ción corresponde ofrecer al respecto.
III
De entrada, debemos tener presente que estamos ante un estatuto de carácter penal. En estos casos, es deseable que la propia Asamblea Legislativa sea la que defina lo que constituye la conducta delictiva penalizada. Nevares-Muñiz, Derecho Penal Puertorriqueño, op. cit, pág. 57. No obstante, en ausencia de una actuación legislativa expresa, este Tribunal debe aclarar el alcance de las leyes penales. En ese ejercicio, conviene tener en mente las disposiciones del Código Penal sobre esta materia, en específico el Art. 13, que dispone lo siguiente:
Las palabras y frases se interpretarán según el contexto y el significado sancionado por el uso común y corriente.
Si el lenguaje empleado es susceptible de dos o más inter-pretaciones, debe ser interpretado para adelantar los propósi-tos de este Código y del artículo particular objeto de interpretación. (Énfasis suplido.) 33 L.P.R.A. see. 4641.
Evidentemente, la disposición transcrita requiere que interpretemos un estatuto conforme a la voluntad del legislador. De igual forma, en nuestra función como intér-pretes de las leyes, debemos considerar la realidad social *417 de donde surgen y operan. Pueblo v. Sierra Rodríguez, 137 D.P.R. 903 (1995); Pueblo v. Arandes de Celis, 120 D.P.R. 530 (1988); Pacheco v. Vargas, Alcaide, 120 D.P.R. 404 (1988). En vista de ello, nuestra función se limita a consi-derar el contexto de sus términos y la interpretación de la intención legislativa. Nevares-Muñiz, Derecho Penal Puertorriqueño, op. cit., pág. 91.
Ahora bien, hemos reiterado que los estatutos penales deben ser interpretados restrictivamente en lo que desfavorezcan al acusado. Pueblo v. Sierra Rodríguez, supra; Pueblo v. Arandes de Celis, supra; Mari Bras v. Alcaide, 100 D.P.R. 506 (1972). Con ello se quiere evitar que se penalice a una persona por una conducta que ésta no podía entender razonablemente que estuviese proscrita. Pueblo v. Tribl. Superior, 81 D.P.R. 763 (1960). Además, la interpretación restrictiva impide que una persona quede sometida a un estatuto penal por meras deducciones —Mari Bras v. Alcaide, supra— o a base del derecho consuetudinario. Chiesa Aponte, Derecho Penal Sustantivo, op. cit., pág. 43.
La interpretación restrictiva cobra importancia cuando existen dudas sobre el alcance o sentido de una disposición penal. Pueblo v. Tribunal Superior, 101 D.P.R. 439 (1973); Mari Bras v. Alcaide, supra. No obstante, ello no requiere que le demos a un estatuto un significado más limitado al que usualmente tiene dentro de la realidad social. Tam-poco requiere que debamos hacer caso omiso a la evidente intención del legislador. Pueblo v. Sierra Rodríguez, supra; Pacheco v. Vargas, Alcaide, supra; Pueblo v. Hernández Colón, 118 D.P.R. 891 (1987). Es decir, ninguna regla de in-terpretación —ni siquiera la de interpretación restrictiva de los estatutos penales— debe derrotar el propósito que la legislación persigue. Véase Pueblo v. Mantilla, 71 D.P.R. 36 (1950). Por ende, la interpretación restrictiva de la ley penal se hará sin menoscabo de la intención legislativa cono- *418 cida o evidente. Pueblo v. De León Martínez, 132 D.P.R. 746 (1993).
En conclusión, constituye un “principio cardinal de hermenéutica que al lenguaje de una ley debe dársele la interpretación que valida el propósito que tuvo el legislador al aprobarla”. Pacheco v. Vargas, Alcaide, supra, pág. 409. Véase, además, Rivera Maldonado v. Autoridad sobre Hogares, 87 D.P.R. 453 (1963). Siendo así, este Tribunal debe interpretar la ley tomando en consideración los fines que persigue y la política pública que la inspira. Pacheco v. Vargas, Alcaide, supra, pág. 409.
Con estos principios en mente, debemos auscultar la in-tención del legislador para determinar lo que constituye “[estar] bajo los efectos de bebidas embriagantes” en el con-texto del Art. 109 del Código Penal vigente. Con ese obje-tivo, pasemos a examinar el historial legislativo de dicho estatuto.
A. Del historial legislativo del Código Penal, en espe-cífico, de los anejos al Informe presentado por la Comisión de lo Jurídico de la Cámara de Representantes,(2) se des-prende que el Art. 109 surge de una combinación y refor-mulación de los Arts. 86 y 87 del derogado Código Penal. Por lo tanto, y en ausencia de otros detalles en el historial legislativo del nuevo Código Penal con respecto al Art. 109, debemos examinar la trayectoria de dichas disposiciones para interpretar el significado y alcance del estatuto vigente.
Téngase presente que en el mencionado Art. 87 consti-tuía un delito incurrir en conducta crasa y temeraria que causara la muerte de un ser humano. Al interpretar dicha disposición, anteriormente señalamos que conducir un ve-hículo de motor en estado de embriaguez no constituía un elemento indispensable del delito, sino que con una alega- *419 ción al respecto se podía establecer un “acto ilegal adicio-nal” para probar que el acusado era culpable de impruden-cia crasa o temeraria. Pueblo v. Vélez Pumarejo, 113 D.P.R. 349, 356 (1982).
Posteriormente el legislador fue más allá y dispuso ex-presamente, mediante enmienda introducida a través de la Ley Núm. 53 de 4 de enero de 2003, que se entendería como conducta crasa y temeraria, entre otras cosas, condu-cir un vehículo de motor bajo los efectos de bebidas embriagantes. En la Exposición de Motivos de dicha en-mienda se dispuso que
[djurante los últimos cinco (5) años, antes de la aprobación de la Ley Núm. 22 de 7 de enero de 2000, conocida como “Ley de Vehículos y Tránsito de Puerto Rico”, habían ocurrido en el Estado Libre Asociado de Puerto Rico un promedio anual de 191,856 accidentes de tránsito con un saldo de 55,150 heridos y 581 muertos. De las 581 muertes, el 38% resultó positivo a alcohol y el 29% reflejó un contenido de alcohol en la sangre de un .10% o más, al momento del accidente. (Enfasis suplido.) 2003 (Parte 1) Leyes de Puerto Rico 166.
En dicha Exposición de Motivos el legislador expresó, además, que el Código Penal en su Art. 87 disponía que será considerado como delito grave ocasionar la muerte a un ser humano mediando imprudencia crasa o temeraria al conducir un vehículo de motor, pero guardaba silencio en torno a si ocasionar la muerte a un ser humano al conducir un vehículo de motor bajo los efectos del alcohol, o sustan-cias controladas debía ser considerado como una conducta penable bajo dicha disposición.
Dado el silencio que dejó el Art. 87 entonces vigente para los casos en que la muerte era ocasionada cuando el vehí-culo era conducido bajo los efectos del alcohol, se indicó en la Exposición de Motivos que la Asamblea Legislativa enten-día necesario crear una legislación dirigida a salvaguardar la seguridad y el bienestar del pueblo puertorriqueño en las carreteras del País. Con ello en mente, se expresó que “[e]s menester establecer claramente que el ocasionar la muerte a *420 un ser humano al conducir un vehículo de motor bajo los efectos del alcohol, o sustancias controladas constituye im-prudencia crasa y temeraria bajo el Artículo 8T. (Énfasis suplido.) Exposición de Motivos de la Ley Núm. 53 (2003 (Parte 1) Leyes de Puerto Rico 167). .
Al promulgar otras medidas, el legislador también puso de manifiesto la relación existente entre la Ley de Vehícu-los y Tránsito de Puerto Rico y otras áreas del ordena-miento criminal. Así, por ejemplo, mediante la Ley Núm. 50 de 9 de agosto de 1989 el legislador enmendó simultá-neamente la Ley de Vehículos y Tránsito de 1960 y la Ley Núm. 259 de 3 de abril de 1946, mejor conocida como Ley de Sentencia Suspendida. Específicamente, mediante dicho estatuto se redujo el nivel de concentración de alcohol en la sangre necesario para activar la presunción de em-briaguez establecida en la entonces vigente Ley de Vehícu-los y Tránsito, a la vez que se excluyó del beneficio de sen-tencia suspendida a las personas convictas de imprudencia crasa o temeraria al conducir un vehículo de motor en es-tado de embriaguez.
En la Exposición de Motivos de la referida Ley Núm. 50, el legislador manifestó que las estadísticas recopiladas por la Comisión para la Seguridad en el Tránsito indican que el consumo de alcohol es un factor determinante en la causa de los accidentes. En vista de ello, expresó que “[e]l propó-sito de esta ley es adoptar medidas que nos permitan sacar a los conductores ebrios de nuestras carreteras e imponer a éstos medidas que desalienten estos hábitos y faciliten su rehabilitación”. (Énfasis suplido.) Exposición de Motivos de la Ley Núm. 50 (1989 Leyes de Puerto Rico 188).
Por otra parte, en una enmienda a la propia Ley de Vehículos y Tránsito de Puerto Rico introducida mediante la Ley Núm. 132 de 3 de junio de 2004, el legislador reafirmó claramente la política a favor de la seguridad pública y, de esta manera, se unió a un movimiento mundial para evitar las muertes en las carreteras ocasionadas por conductores *421 en estado de embriaguez. A esos fines, expresó que “[e]l transitar con seguridad por las carreteras de un país es re-quisito básico del progreso económico, pero más aún, es indispensable para mantener la estabilidad social y emocional de la familia .... El tránsito por las vías públicas tiene que operar con orden y en forma reglamentada; la Ley de Vehículos y Tránsito de Puerto Rico’ es el medio que la Legislatura del Estado Libre Asociado de Puerto Rico ha suministrado para lograr el control del conductor ebrio o bajo los efectos de sustancias controladas ...”. (Enfasis suplido.) Ex-posición de Motivos de la Ley Núm. 132 (2004 (Parte 1) Le-yes de Puerto Rico 615).
Medianté dicha enmienda a la Ley de Vehículos y Trán-sito de Puerto Rico el legislador pretendió, además, revisar el proceso de identificar a los que conducen vehículos de motor bajo los efectos de bebidas alcohólicas y sustancias controladas. Ello en vista de que para el 2001, cuando en-tró en vigor la Ley Núm. 22, supra, la Policía reportó sobre 14,000 intervenciones por conducir en estado de embria-guez, de las cuales sobre 12,000 dieron resultados de más del [. 08%} del nivel de alcohol en la sangre”. Exposición de Motivos de la Ley Núm. 132, supra.
De lo anterior surgen varias conclusiones. Primero, que al establecer y tipificar los delitos antecesores del delito de homicidio negligente, el legislador hizo referencia a las dis-posiciones de la Ley de Vehículos y Tránsito de Puerto Rico, ya que esa es la legislación que establece las pautas con respecto al problema de la embriaguez en las carrete-ras del País. Al así hacerlo, confirió especial importancia a los porcentajes de alcohol allí contemplados para identifi-car los casos de conductores ebrios y los problemas causa-dos por ellos. Es decir, de lo anterior queda claro que cuando el legislador decidió incorporar como modalidad del delito de imprudencia crasa o temeraria conducir un vehí-culo de motor bajo los efectos del alcohol, tuvo muy pre-sente las disposiciones de la Ley de Vehículos y Tránsito de *422 Puerto Rico, la política pública en ella promulgada e, in-cluso, el por ciento de alcohol que se encontró en gran parte de los conductores que se vieron involucrados en acciden-tes de tránsito, el cual constituía en aquel entonces una presunción de estar bajo los efectos de bebidas embriagantes. (3)
Al así legislar era evidente la preocupación por el pro-blema de los accidentes causados por conductores en es-tado de embriaguez y la determinación de promover una vigorosa política pública para garantizar la seguridad en las carreteras del País. Asimismo, de allí surge que el le-gislador consideró las disposiciones de la Ley de Vehículos y Tránsito de Puerto Rico en distintos momentos para apli-car las normas sustantivas allí incorporadas a otras áreas del campo criminal. Incluso, queda claro que el legislador entendió que la Ley de Vehículos y Tránsito de Puerto Rico es el instrumento para identificar a los que conducen bajo los efectos de bebidas embriagantes y, en última instancia, para lograr el control del problema causado por éstos.
En vista de ello, no podemos ignorar lo dispuesto en la Ley de Vehículos y Tránsito de Puerto Rico al momento de interpretar lo que el legislador quiso decir con “[estar] bajo los efectos de bebidas embriagantes” al tipificar una de las modalidades agravadas del delito de homicidio negligente. Téngase presente que, conforme al análisis antes esbozado, no es mera causalidad que el legislador haya usado esa frase de forma idéntica a la terminología empleada en la Ley de Vehículos y Tránsito de Puerto Rico vigente.
B. La Ley de Vehículos y Tránsito de 2000 procuró, entre otras cosas, simplificar las gestiones gubernamentales en esta materia y minimizar la necesidad de intervención de las autoridades, mientras fortalecía las *423 sanciones en cuanto a aquellas violaciones de ley que pre-senten grave riesgo a la seguridad pública. Exposición de Motivos de la Ley Núm. 22 (2000 (Parte 1) Leyes de Puerto Rico 86).
En lo pertinente al caso que nos ocupa, el Art. 7.01 de dicho estatuto dispone que representa “la posición oficial y política pública del Gobierno del Estado Libre Asociado de Puerto Rico, que el manejo de vehículos o vehículos de motor en las vías públicas bajo los efectos de bebidas embria-gantes, drogas o sustancias controladas, constituye una amenaza de primer orden a la seguridad pública (En-fasis suplido.) 9 L.P.R.A. see. 5201. De acuerdo con ello, se declara como ilegal que “cualquier persona bajo los efectos de bebidas embriagantes, drogas o sustancias controladas conduzca, [o] haga funcionar cualquier vehículo o vehículo de motor ...”. íd.
Por otra parte, el Art. 7.02 establece que “[e]n cualquier proceso criminal por infracción [a lo dispuesto en el mencionado Art. 7.01], el nivel o concentración de alcohol existente en la sangre del conductor al tiempo en que se cometiera la alegada infracción ... constituirá base para lo siguiente: (a) Es ilegal per se, que cualquier persona mayor de dieciocho (18) años de edad conduzca o haga funcionar un vehículo de motor, cuando su contenido de alcohol en [la] sangre sea de ocho (8) centésimas del uno (1) por ciento (.08%), o más, según surja tal nivel o concentración del análisis químico o físico de su sangre, o de su aliento”. (Énfasis suplido.) 9 L.P.R.A. sec. 5202(a).
Ahora bien, conviene aclarar que la Ley de Vehículos y Tránsito de Puerto Rico no siempre ha tenido ese lenguaje. Antes de que se promulgara la ley vigente en el 2000, el estatuto no aludía a la concentración de alcohol en la san-gre para establecer un delito per se, sino para establecer presunciones de embriaguez. A esos efectos, la Ley Núm. 141 de 20 de julio de 1960, que fuera derogada por la ley actual, disponía que
*424 [e]n cualquier proceso por infracción al párrafo (a)... [el cual establecía la ilegalidad de conducir bajo los efectos de bebidas embriagantes,] la cantidad de alcohol existente en la sangre del acusado al tiempo en que se cometiere la alegada infrac-ción ... constituirá base para las siguientes presunciones:
(1) Si al momento del análisis había en su sangre cinco (5) centésimas de uno (1) por ciento, o menos, por peso de alcohol se presumirá que no estaba bajo los efectos de bebidas embriagan-tes ....
(2) Si a tal momento se hallare en la sangre del acusado más de cinco (5) centésimas de uno por ciento, pero menos de quince (15) centésimas de uno (1) por ciento, por peso de alcohol, tal prueba no constituirá base para presumir que el acu-sado estaba o no bajo los efectos de bebidas embriagantes, pero dicha prueba podrá ser considerada ... con otra evidencia competente para determinar [su] culpabilidad o inocencia ....
(3) Si al momento del análisis había en [su] sangre quince (15) centésimas de uno (1) por ciento de alcohol, o más, por peso de alcohol, se presumirá que ... estaba bajo los efectos de bebidas embriagantes ... . 1960 Leyes de Puerto Rico 481. Véase también la Ley Núm. 95 de 29 de junio de 1954.(4)
El proyecto que desembocó en la ley actual también pro-puso inicialmente utilizar el nivel de alcohol en la sangre como presunción de embriaguez. Sin embargo, el legislador optó por eliminar las presunciones contenidas en la ley con respecto a los porcentajes de alcohol y, en su lugar, incorporó el lenguaje de “ilegal per se” para establecer concretamente la ilegalidad del acto de conducir un vehículo de motor cuando el contenido de alcohol en la sangre es de .08% o más. Véase Proyecto del Senado 637 de 12 de agosto de 1997.
*425 Por lo tanto, en el estatuto vigente el nivel o concentración de alcohol en la sangre no es meramente un elemento probatorio, sino que representa una norma a los efectos de que determinado por ciento de alcohol en la sangre es suficiente para concluir que la persona está, efectivamente, bajo los efectos del alcohol en violación de la Ley de Vehículos y Tránsito de Puerto Rico. Así surge, no sólo del texto del Art. 7.02 de la ley, supra, sino además de un análisis integral del estatuto.
Por ejemplo, nótese que el Art. 7.09 de la Ley de Vehí-culos y Tránsito de Puerto Rico establece que “[d]e resultar con una concentración menor a la indicada anteriormente, ... se concluirá que la persona detenida o arrestada no ha estado conduciendo o haciendo funcionar un vehículo bajo los efectos de bebidas embriagantes”. 9 L.P.R.A. see. 5209(f). No cabe duda que el legislador confirió tal impor-tancia a los porcentajes de alcohol en la sangre que, para efectos de ese estatuto, estableció que una cantidad de alcohol en la sangre menor a la prohibida en el Art. 7.02, supra, supone que la persona, de hecho, no está bajo los efectos de bebidas embriagantes.
Por otra parte, subsiguientemente se establece que si luego de realizar las pruebas de alcohol, éstas reflejan que el conductor no estaba bajo los efectos de bebidas embria-gantes y aún así diera indicios de estar intoxicado, el agente del orden público tendrá motivos para creer que se encuentra bajo los efectos de drogas o sustancias controladas. 9 L.P.R.A. sec. 5209(f). Ciertamente, ello sig-nifica que el legislador concibe que las pruebas de alcohol son capaces de establecer si una persona está bajo los efec-tos de bebidas embriagantes para propósitos de conducir un vehículo de motor.
A igual conclusión nos lleva el análisis del Art. 7.04(a) en cuanto dispone que a la persona que haya sido interve-nida por violar los Arts. 7.01, 7.02 y 7.03 no se le permitirá *426 conducir y se le transportará hasta el cuartel más cercano, donde permanecerá hasta tanto el nivel de alcohol en la sangre sea menor del mínimo permitido por ley. 9 L.P.R.A. sec. 5204(a). Dé esta disposición se desprende que para el legislador el resultado de la prueba de alcohol en estos ca-sos no sólo es pertinente, sino que puede ser suficiente para establecer que una persona está capacitada para ma-nejar un vehículo de motor, en cuanto refleje que su nivel de alcohol en la sangre está por debajo del que prohíbe la ley. Evidentemente, ello sugiere que el nivel prohibido no ha sido seleccionado arbitrariamente, sino que responde a un análisis previo que convenció al legislador de que ese por ciento de alcohol en la sangre puede representar un riesgo para la seguridad ciudadana y que, por el contrario, una cantidad menor a ella no configura tal riesgo.
Finalmente, cabe señalar que décadas atrás ya habíamos aclarado el objetivo detrás de la incorporación de los porcentajes de alcohol a nuestra legislación sobre vehículos y tránsito. A esos fines, en Pueblo v. Tribunal Superior, 84 D.P.R. 392, 397 (1962), dijimos que “[a] pesar de que existen diferencias entre los individuos en cuanto se refiere a la forma de absorción y eliminación de alcohol, la investigación científica y la experiencia han demostrado que el análisis del contenido de alcohol en la sangre constituye un medio adecuado y confiable para medir los efectos de las bebidas embriagantes en una persona”. (Énfasis suplido.) Indicamos que ese método ha recibido la aprobación de diversas entidades especialistas en el asunto y que “[e]l propósito principal de estas disposiciones es establecer normas fijas para la determinación de si el acusado estaba bajo la influencia de bebidas alcohólicas, y eliminar la necesidad de presentar testimonio pericial”. (Escolio omitido y énfasis suplido.) íd. Así, pues, no cabe duda que aún en aquel entonces reconocimos el valor que pueden tener las *427 pruebas de alcohol a la hora de determinar lo que es estar bajo los efectos de bebidas embriagantes. (5)
IV
Como surge del análisis anterior, una vez examinamos la intención del legislador al incorporar la frase “[estar] bajo los efectos de bebidas embriagantes” en el Art. 109 del Código Penal de 2004, notamos que se hace referencia a sus artículos antecesores en el derogado Código Penal. A su vez, al auscultar la trayectoria de tales disposiciones, des-cubrimos que al establecerlas el legislador tuvo en mente, no sólo la letra y los porcentajes de alcohol de la Ley de Vehículos y Tránsito de Puerto Rico sino, además, la polí-tica pública en ella plasmada. Por lo tanto, ello nos hizo recurrir a las disposiciones de esa ley, de las cuales surge que el legislador procuró que los porcentajes de alcohol en la sangre fueran seriamente considerados a la hora de de-terminar lo que se puede entender por “[estar] bajo los efectos de bebidas embriagantes” para fines del Art. 109 del Código Penal. Siendo así, la exigencia de conferirle ar-monía y coherencia a los actos legislativos nos obliga a con-siderar los niveles de alcohol prohibidos por la Ley de Ve-hículos y Tránsito de Puerto Rico al momento de interpretar dicha frase en el contexto del Art. 109 del Có-digo Penal.
Ahora bien, aunque estamos llamados a considerar las disposiciones de la Ley de Vehículos y Tránsito de Puerto Rico a la hora de interpretar la frase “[estar] bajo los efectos *428 de bebidas embriagantes”, de igual manera estamos obliga-dos a realizar una interpretación restrictiva cuando ello es contrario a los derechos de los acusados. En este caso, pre-cisamente, conferirle a las disposiciones de la Ley de Vehí-culos y Tránsito de Puerto Rico un carácter normativo o de presunción irrefutable para propósitos del Art. 109 del Có-digo Penal, sería contrario a los derechos de la acusada. Si bien no podemos hacer caso omiso a la existencia de tales disposiciones, lo cierto es que el legislador no incorporó ex-presamente dicha normativa en el texto del Art. 109 del nuevo Código Penal. Ello, de por sí, nos obliga a actuar con cautela y mesura para evitar violar el derecho de la acusada a un juicio justo, sobre todo al tener en cuenta que el tér-mino de reclusión que ésta enfrentaría de probarse la mo-dalidad agravada del homicidio negligente podría ser hasta cinco años mayor. (6) La cautela que se impone en este caso tiene su razón de ser también en la naturaleza diversa de los delitos involucrados y en la conveniencia de que sea el propio legislador quien establezca normas de derecho sus-tantivo en el campo criminal.
Por otro lado, somos conscientes de que en casos criminales las presunciones no pueden tener carácter mandatorio ni fuerte contra el acusado. Regla 15 de Evidencia, 32 L.P.R.A. Ap. IV; E.L. Chiesa, Tratado de Derecho Probatorio, Santo Domingo, Ed. Corripio, 1998, T. II, pág. 1099. Es decir, la presunción no puede ser incontrovertible o concluyente; no puede tener el efecto de obligar al juzgador a inferir el hecho presumido cuando el acusado no presenta evidencia para refutarlo y no puede requerir que el acusado lo persuada con respecto a la no ocurrencia del hecho presumido. Véanse: Pueblo v. Sánchez Molina, supra, págs. 587-588; E.L. Chiesa, Sobre la validez constitucional *429 de las presunciones, 14 (Núm. 3) Rev. Jur. U.I.A. 727, 750 (mayo-agosto 1980). Ello responde a que las presunciones incontrovertibles o concluyentes atentan contra la presun-ción de inocencia y, por consiguiente, son inconsti-tucionales. íd.
Cónsono con lo anterior, procede considerar la norma-tiva establecida en la Ley de Vehículos y Tránsito de Puerto Rico con respecto a lo que se entiende por “[estar] bajo los efectos de bebidas embriagantes” en el contexto del Art. 109 del Código Penal como una inferencia permisible y controvertible. En vista de ello, al Jurado se le debe ins-truir sobre dicha normativa para que puedan llegar a la determinación de lo que se puede entender por “[estar] bajo los efectos de bebidas embriagantes” en el Art. 109 del Código Penal.(7) De tal forma, la prohibición de que una persona conduzca o haga funcionar un vehículo bajo los efectos de bebidas embriagantes cuando el contenido de alcohol en su sangre sea de .08% o más, le permitiría infe-rir al Jurado que esa persona, de hecho, estaba bajo los efectos de bebidas embriagantes para propósitos del delito de homicidio negligente en la modalidad agravada que nos concierne.
Por otro lado, la demostración de que la peticionaria tenía un nivel de alcohol en la sangre igual o superior al que prohíbe la Ley de Vehículos y Tránsito de Puerto Rico necesariamente no obligaría a los miembros del Jurado a concluir que ella estaba, de hecho, bajo los efectos de bebi-das embriagantes, aun cuando no presente prueba para refutar tal inferencia.
*430 Debe quedar claro, además, que así como un nivel de alcohol en la sangre de más de .08% no significa necesaria-mente que la persona conducía bajo los efectos de bebidas embriagantes, un nivel de alcohol de menos de .08% tam-poco implica necesariamente que la persona no conducía bajo los efectos de bebidas embriagantes.
Ahora bien, a la hora de determinar si la peticionaria estaba o no bajo los efectos de bebidas embriagantes, el Jurado puede considerar otros factores relevantes basados en el conocimiento general y la experiencia humana. Es decir, que al momento de interpretar y darle contenido a la frase “[estar] bajo los efectos de bebidas embriagantes” se pueden considerar otros factores que respondan al uso y sentido común de las palabras. Así, por ejemplo, se puede tomar en cuenta, tal como lo hizo el juzgador de instancia al redactar la instrucción que se proponía ofrecer al Jurado, que la frase “[estar] bajo los efectos de bebidas embriagantes” se asocia con una disminución o pérdida de las facultades físicas y mentales causada por la presencia de alcohol en el cuerpo. Es decir, se refiere esencialmente a un estado en el que las capacidades físicas, motoras y mentales de un individuo están afectadas por la presencia de alcohol en su cuerpo, al extremo que su funcionamiento se torna distorsionado o perturbado.(8)
En conformidad con esto, se pueden considerar las señales o signos que comúnmente presentan las personas que han ingerido alcohol en exceso. Nótese que el Diccionario de la Lengua Española define “embriaguez” como turbación pasajera de las potencias, exceso con que se ha bebido vino o licor. También se define como enajenación del ánimo. Por su parte, “embriagar” se define como atontar, perturbar, adormecer y como perder el dominio de sí por beber en exceso vino o licor. Diccionario de la Lengua Es *431 pañola, Real Academia Española, 21ra ed., Madrid, Ed. Espasa Calpe, 1992, T. 1, pág. 568.
Por lo tanto, nada impide que al momento de determi-nar si la acusada estaba bajo los efectos de bebidas embria-gantes, el Jurado considere el dominio que ésta tenía sobre sí misma, la apariencia de sus ojos, el dominio del habla, el grado de control que ejerció sobre su vehículo hasta el mo-mento del accidente, su estado anímico, así como cualquier otro factor que refleje el estado de sus facultades físicas y mentales. (9)
Aunque la última instrucción propuesta por el Ministerio Público en su alegato ante esta Curia se ajusta a los pronunciamientos anteriores con respecto a la pertinencia y al peso que se le puede conferir al nivel de alcohol, ésta no incluye estos otros factores que el Jurado puede considerar a la hora de determinar si la acusada conducía bajo los efectos de bebidas embriagantes. Por lo tanto, procedemos a acoger la instrucción propuesta con varias modificaciones dirigidas a suplir dicha omisión. Así, la instrucción que se debe impartir con respecto al delito de homicidio negligente cuando se le imputa al acusado la modalidad agravada de haber causado la muerte al conducir un vehículo de motor bajo los efectos de bebidas embriagantes, es la siguiente:
Para hallar culpable a la acusada de violar el Art. 109 del Código Penal que establece el delito de homicidio negligente por ocasionar la muerte de las víctimas al conducir un vehí-culo de motor bajo los efectos de bebidas embriagantes, uste-des tendrán que quedar convencidos más allá de duda razona-ble de que ésta, al momento de los hechos, conducía su *432 vehículo bajo los efectos de bebidas embriagantes. Además, deberán estar convencidos más allá de duda razonable de que tales muertes se produjeron como consecuencia del riesgo creado por ella al conducir en tales condiciones. Para determi-nar si la acusada conducía bajo los efectos de bebidas embria-gantes para efectos del mencionado Art. 109 del Código Penal, ustedes podrán tomar en consideración que la Ley de Vehícu-los y Tránsito vigente establece que es ilegal que una persona conduzca un vehículo de motor con una concentración de alcohol en la sangre de .08% o más y que la prueba de alcohol que se le realizó a la acusada arrojó un resultado de .125% de concentración de alcohol en la sangre. Sin embargo, el mero hecho de que la acusada arrojara esa concentración de alcohol en la sangre, no significa que ustedes están obligados a inferir que ella conducía bajo los efectos de bebidas embriagantes ya que en dicha determinación ustedes pueden considerar otros factores, entre ellos, la forma en que ésta conducía su vehículo hasta el momento del accidente; la condición que mostró des-pués del accidente en cuanto a sus destrezas físicas y motoras; su dominio del habla; el olor que expedía su aliento; la condi-ción y apariencia de sus ojos; así como cualquier otro factor que refleje el estado de sus facultades físicas y mentales y el grado de control que ésta ejercía sobre sí misma.
En resumen, después de considerar toda la prueba, para encontrar culpable a la acusada de violar el Art. 109 del Có-digo Penal, ustedes tendrán que quedar convencidos más allá de duda razonable de que ésta, al momento de los hechos, conducía su vehículo bajo los efectos de bebidas embriagantes. Si, por el contrario, ustedes albergan duda razonable sobre si la acusada conducía bajo los efectos de bebidas embriagantes al momento de los hechos, deben absolverla del cargo de ho-micidio negligente basado en ocasionar la muerte de las vícti-mas al conducir un vehículo de motor bajo los efectos de bebi-das embriagantes. Igualmente, en cuanto a ese cargo deben absolverla ante duda razonable sobre la relación causal entre la muerte de las víctimas y la conducción bajo los efectos de bebidas embriagantes.(10)
*433 V
No cabe duda que ninguna regla de interpretación debe derrotar ni menoscabar el propósito del legislador. Cierta-mente, estamos convencidos de que la conclusión a la que hemos llegado no tiene ese efecto. Por un lado, validamos el propósito del legislador al aprobar el Art. 109 del Código Penal con el lenguaje señalado y ponemos en vigor la polí-tica diseñada para proveer seguridad en las carreteras del País. A la vez, eliminamos impedimentos innecesarios a la labor del Estado a la hora de identificar a las personas que actúan en contravención al interés público así plasmado.
Por otro lado, con el resultado alcanzado ponemos en práctica la normativa que nos requiere realizar una inter-pretación restrictiva cuando hacer lo contrario podría me-noscabar los derechos del acusado. De esa forma, cumpli-mos con la tarea de proveerle a la señora Figueroa Pomales las salvaguardas necesarias para asegurarle un proceso justo y un veredicto conforme a derecho.
VI
Por los fundamentos que anteceden, modificamos el dic-tamen del Tribunal de Apelaciones y ordenamos que se im-parta al Jurado la instrucción anteriormente dispuesta con respecto a la modalidad agravada del delito de homicidio negligente, basada en haber ocasionado la muerte de una persona al conducir un vehículo de motor bajo los efectos de bebidas embriagantes.

Se dictará sentencia de conformidad.

 Nuestro ordenamiento no prohíbe que los tribunales interpreten la ley penal. Lo que está prohibido es la analogía. Para distinguir entre la interpretación y la analogía, debemos tener en mente que “[l]a analogía lleva siempre una extensión de la ley, pero ella se distingue de la interpretación de esta índole, porque en ésta, aunque el intérprete se sirva de elementos sistemáticos, el caso está previsto por los legisladores, incluso con palabras inadecuadas, mientras que en la aplicación analó-gica no ha sido contemplada aquella hipótesis por la ley.... En la interpretación extensiva falta la expresión literal, pero no la voluntad de la ley, y en la analogía falta también la voluntad de ésta”. (Énfasis suplido.) D. Nevares-Muñiz, Derecho Penal Puertorriqueño: Parte General, Hato Rey, Inst. Desarrollo del Derecho, 1983, pág. 96 (citando a Jiménez de Asúa).

 Tabla de Concordancias y Antecedentes entre el Código Penal de 1974 y el Código [entonces] Propuesto.

 Como surge de Pueblo v. Nazario Hernández, 138 D.P.R. 760 (1995), el porcentaje de alcohol en la sangre ha sido un factor pertinente en casos donde se imputa violación al Art. 87 del Código Penal por haber conducido un vehículo de motor bajo los efectos del alcohol.

 La Ley Núm. 95 disponía que “[a] los fines de la sección (a) constituirá evidencia prima facie de que el acusado no estaba intoxicado o bajo los efectos de bebidas embriagantes, prueba de que al momento del análisis había en su sangre 5/100 avas partes de un por ciento, o menos, por peso de alcohol; (b) constituirá prueba relevante pero no será evidencia prima facie, sobre si el acusado estaba o no intoxicado o bajo los efectos de bebidas embriagantes, el hecho de que en su sangre se halló más de 5/100 avas partes de un por ciento de alcohol pero menos de 15/100 avas partes ...; y (c) se admitirá como evidencia prima facie de que el acusado estaba intoxicado o bajo los efectos de bebidas embriagantes, el hecho de que al momento del análisis había en su sangre 15/100 avas partes de un por ciento, o más, por peso, de alcohol”. 1954 Leyes de Puerto Rico 993 y 995.

 Su valor fue reafirmado poco después en Pueblo v. Tribunal Superior, 86 D.P.R. 834, 842 (1962). Allí, aun cuando el contenido de alcohol configuraba meras presunciones, dijimos que “[e]l establecimiento de [tales] presunciones en cuanto al contenido de alcohol en las muestras de sangre u orina no tiene otro propósito que darle al magistrado instructor al determinar causa probable, una base más científica para apreciar debidamente si el conductor del vehículo estaba, al momento de cometer el delito, en estado de embriaguez”. (Enfasis suplido.)

 Téngase presente que la pena estatuida para el delito de homicidio negli-gente, por considerarse como la de un delito grave de cuarto grado, es un término fijo de reclusión no menor de seis meses y un día, ni mayor de tres años, en contraste con el delito en sus modalidades agravadas que, por llevar pena de delito grave de tercer grado, conlleva un término fijo de reclusión no menor de tres años y un día, ni mayor de ocho años. Véase Art. 66 del Código Penal, 33 L.P.R.A. sec. 4694(c), (d) y (e).

 El manual de Instrucciones al Jurado para el Tribunal Superior de Puerto Rico, aún vigente, dispone, en el Comentario a la instrucción correspondiente en casos de lo que antes constituía homicidio involuntario, que “[c]uando el homicidio involuntario se comete por una persona al conducir un vehículo de motor, el juez deberá impartir instrucciones en cuanto a las disposiciones de la Ley de Tránsito pertinentes al caso”. (Énfasis suplido.) Instrucciones al Jurado para el Tribunal Superior de Puerto Rico, Conferencia Judicial de Puerto Rico, 2da ed., San Juan, Cole-gio de Abogados de Puerto Rico, 1977, págs. 126-127. Si bien el uso del manual es discrecional, lo cierto es que sus preceptos gozan de una presunción de corrección. Véase Resolución del Tribunal Supremo de 7 de mayo de 1976, In re Aprobación del Libro de Instrucciones al Jurado para el Tribunal Superior de Puerto Rico.

 Véase Domínguez v. GA Life, 157 D.P.E. 690 (2002), donde dimos por buena esa interpretación para la frase “bajo los efectos de bebidas alcohólicas o embriagantes” a la luz de su significado común y corriente.

 Así lo hemos señalado en otras ocasiones. Véase, por ejemplo, Pueblo v. Díaz Just, 97 D.P.R. 59 (1969), donde expresamos que se puede establecer que una persona conducía bajo los efectos de bebidas embriagantes por medio del testimonio de personas que observaron su comportamiento. A esos fines, consideramos el hecho de que ciertos testigos indicaron haber notado que el acusado olía a licor, se tambaleaba y hablaba incoherentemente. Véanse, también: Pueblo v. Zalduondo Fontánez, 89 D.P.R. 64 (1963); Pueblo v. Soto Cintrón, 87 D.P.R. 688 (1963); Pueblo v. Hernández Justiniano, 86 D.P.R. 793 (1962); Pueblo v. Tribunal Superior, 84 D.P.R. 392 (1962).

 Debemos enfatizar que la instrucción dispuesta se limita a la modalidad agravada del delito de homicidio negligente basada en haber ocasionado la muerte de una persona al conducir un vehículo de motor bajo los efectos de bebidas embriagantes. Por lo tanto, mediante este dictamen no pretendemos establecer la instrucción que corresponde ofrecer con respecto a la segunda modalidad del delito de homicidio negligente que se le imputa a la peticionaria, basada en haber causado la muerte al conducir un vehículo de motor con claro menosprecio de la seguridad de los demás.